### SIPP v. COLEMAN.

(Circuit Court, D. New Jersey. June 29, 1910.)

1. LIBEL AND SLANDER (§ 86*)—INNUENDO—SURPLUSAGE.

A declaration for slander, alleging that defendant had stated that plaintiff had been convicted of beating his mother, imputed a criminal offense, indictable as provided by P. L. N. J. 1898, p. 854, §§ 215, 218; and hence an innuendo that the words intended to charge that plaintiff was then and there guilty of a crime, to wit, the crime of assault and battery, was unnecessary and surplusage.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 205–208; Dec. Dig. § 86.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LIBEL AND SLANDER (§ 7\*)—WORDS SLANDEROUS PER SE.

    Words charging complainant with having been convicted of a crime are not slanderous per se, unless the crime charged involved moral turpitude.

    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–19; Dec. Dig. § 7.\*]

3. LIBEL AND SLANDER (§ 7\*)—WORDS SLANDEROUS PER SE—MORAL TURPITUDE.

    Alleged slanderous words, charging that plaintiff had been convicted of beating his mother, imputed a crime involving moral turpitude, and were therefore slanderous per se.

    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 31; Dec. Dig. § 7.\*]

    At Law. Action by George A. Sipp against Mary Coleman. On demurrer to declaration. Overruled.

    Wendell J. Wright, for plaintiff.

    McCarter & English, for defendant.

    RELLSTAB, District Judge. This is an action for slander. A demurrer is interposed to the first count, which charges the defendant with having said of the plaintiff:

    "This man has been convicted of beating his mother (thereby and then and there meaning that the plaintiff has been and was then and there guilty of a crime, to wit, the crime of assault and battery)."

    No special damages are alleged, and the question is whether these words are actionable per se.

    These words impute a criminal offense, indictable under the laws of the state of New Jersey, and punishable by a fine not exceeding $1,000, or imprisonment with or without hard labor, as the court may direct, for any term not exceeding three years, or both. P. L. N. J. 1898, p. 854, §§ 215, 218. No innuendo was necessary, and the one employed may be treated as surplusage. Curley v. Feeney, 62 N. J. Law, 70, 40 Atl. 678.

    There is much confusion in the older cases concerning whether accusing another of an indictable offense is slanderous per se, regardless of the nature of the crime; but it may now be considered settled that only where the crime charged involves moral turpitude may the oral accusation be said to be slanderous per se—that is, actionable without the allegation of special damage. Pollard v. Lyon, 91 U. S. 225, 23 L. Ed. 308; Ludlum v. McCuen, 17 N. J. Law, 12, 17; 25 Cyc. 270; 18 Am. & Eng. Enc. L. 868. Moral turpitude in this connection has been defined to be an act of baseness, vileness, or depravity in the private or social duties which a man owes to his fellow man or to society in general, contrary to the accepted and customary rule of right and duty between man and man. 25 Cyc. 272. Moral standards change with the ages. The changes, however, are upward, and must continue upwards until the standards of the Christ shall be universally accepted.

    Conduct which in ancient or even medieval times would be accepted as conventional, and therefore, in a legal sense, moral, would now be denounced as decidedly immoral. What in the old common law would be termed moderate correction of the wife by the husband (1 Black-

stone, Com. p. 444) is now execrated as wife-beating, and punished as a despicable crime. Destroying fruit trees of another (Murray v. McAllister, 38 Vt. 167), furnishing watered milk to a creamery (Geary v. Bennett, 53 Wis. 444, 10 N. W. 602), removing landmarks (Young v. Miller, 3 Hill [N. Y.] 21), selling diseased meat (Leitz v. Hohman, 16 Pa. Super. Ct. 276), drunkenness (Morgan v. Kennedy, 62 Minn. 348, 64 N. W. 912, 30 L. R. A. 521), and drunkenness on the part of women (Brown v. Nickerson, 5 Gray [Mass.] 1), are some of the offenses said to involve moral turpitude. See 25 Cyc. 272, note 43.

Speaker v. McKenzie, 26 Mo. 255, Birch v. Benton, 26 Mo. 153, and Billings v. Wings, 7 Vt. 439, are relied upon by the demurrant. None of them, however, supports her contention. A reading thereof will show that the accusations therein decided as not actionable per se did not charge crimes in those states; and it was this, and not the lack of moral turpitude of the offense imputed, that led the court to so decide. In Speaker v. McKenzie the statement was that the defendant had whipped his mother. This was decided on the authority of Birch v. Benton, in which the charge was wife-beating; and the court, in stating the reason for reversing the trial court, which held that the words charging assault and battery on the wife were actionable, left no doubt that it considered wife-beating as involving moral turpitude. It said:

"There is no act which is more disgraceful or cowardly, and no offence for which a man ought more promptly to be branded with shame."

Both of these Missouri cases were decided in 1858, and an examination of the laws of that state then in force shows that assault and battery was not an indictable offense, but was to be punished in a summary manner before a justice of the peace. Rev. St. Mo. 1855, p. 977, § 1.

The dicta in Andres v. Koppenheafer, 3 Serg. & R. (Pa.) 255, 8 Am. Dec. 647 (charging making of a libel), and Ludlum v. McCuen, 17 N. J. Law, 12 (charging opening and reading a letter sent by mail), are also cited by demurrant, that charging assault and battery was not actionable. An assault and battery may be of a trivial character, just beyond the line dividing lawful from unlawful force. In such case no moral turpitude would be involved. It may be of such an atrocious character, however, as to involve moral turpitude of a high degree; but giving the cited dicta full effect, as the words "assault and battery" do not necessarily impute the unlawful force to be of the more aggravated character, the mere charging of another with having committed the offense in the words "assault and battery" would not impute moral turpitude.

However, the accusing of another of having beaten his mother charges a graver offense, imputing not mere exercise of force unlawfully, but a wanton disregard or repudiation of filial honor and duty that a son owes to the one who bore and nurtured him. The obligations of the Fifth Commandment are recognized by the secular as well as the ecclesiastical law. The family relation is the basis upon which our entire social superstructure is erected. The dishonoring of the parent by the child injuriously affects the whole social fabric. Very

low, indeed, in the scale of civilization, would a community be that recognized no distinction in morals between an assault and battery by one stranger upon another and one by a son upon his mother. The numerous provocations which cause many fair-minded and good-hearted men to lose their self-control and commit assault and battery upon their fellows would not disturb their equanimity in their dealings with their parents. Respect and love for parents is written into the very law of a normal man's being, and this would prevent him from assaulting them, whatever the provocation. The beating of a mother by her son is therefore abnormal, and so contrary to the accepted and customary rules of civilized society that baseness and depravity of heart in the perpetrator is at once suggested to the mind on hearing that such an offence has been committed. To hold in this state and generation that the beating of one's mother does not involve moral turpitude would itself be a slander of a commonwealth conspicuous for its high regard for and enforcement of filial obligations.

The demurrer is overruled.