CHARLES MOSLER, PLAINTIFF-APPELLANT, v. FRANCIS
J. WHELAN, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1957—Decided January 28, 1958.

492

494

496

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Harry Green* argued the cause for plaintiff-appellant (*Mr. Gordon N. Litwin,* attorney).

*Mr. Wilfred W. Hollander* argued the cause for defendant-respondent (*Messrs. Garven, Gelman & Hollander,* attorneys).

The opinion of the court was delivered by

CONFORD, J. A. D. This is a libel action. There was a jury verdict in the Law Division for the defendant. Plaintiff's appeal is from the consequent judgment and the denial of a motion for a new trial. The most substantial errors assigned are the refusals of the trial court to enter an interlocutory judgment in favor of the plaintiff on the issue of liability or to instruct the jury that the publication complained of was "libelous *per se.*" We have concluded that the publication in question was defamatory on its face and libelous as a matter of law, and that the failure of

the trial court to recognize this requires a reversal of the judgment and remand for a new trial.

Both of the parties are residents of Paramus and active in its political affairs. Defendant was and is president of an organization named "Independent Citizens of Paramus Organization." Plaintiff in recent years has been active in Democratic party politics in the municipality, having been president of the local party club and campaign manager for candidates for municipal office.

The present action is founded upon the following "letter to the editor," written by defendant and published in *The Paramus Post,* a weekly newspaper, March 18, 1956.

"Dear Editor:

Many thanks to your newspaper for presenting both sides of the inter-party squabble resulting from the article issued in the name of Mrs. Harry Ferrante of the executive committee of the Democratic Club and the answer of Republican candidate for Mayor, Robert A. Renna. My reaction, after reading both sides of the matter, indicated quite clearly to me that Mr. Charles Mosler is definitely influenced in his thinking by a foreign philosophy alien to the American way.

I took the trouble to read many of the articles written by the Democratic Club during the last election. To my utter surprise they contained many personal attacks upon the character of the opposing candidates. Although Mayor Galda concluded several of the articles which appeared in the newspapers with the paragraph that he detests personal vilification, character assassination and maligning of individuals, yet the remarks in his previous paragraphs contained these very practices which he stated he could not condone. It became quite apparent to me that all of their articles contained attacks on the dignity of his opponents.

The present controversy, which I am given to understand resulted in an inter-party squabble, likewise was written in the same vein. To my mind the source of this type of writing can be attributable to only one man.

It is unfortunate that many upright citizens have found themselves involved in political squabbles as a result of finding their names signed to articles to which they did not fully subscribe. Can it be that Mrs. Ferrante knew nothing about the contents of this article when it was given to the press? Apparently her ire was aroused when she found herself the center of such a controversy.

As a citizen of high integrity she undoubtedly asserted herself in opposition to any future articles bearing her name and containing such unkind remarks leveled against any candidates as to all intents and purposes she is a well informed and sincere woman.

I would further suggest that the real Democrats in town divest themselves of this type of writer, whose un-American tactics upon other citizens have no place in the true American manner of conducting a campaign.

Sincerely yours,
FRANCIS J. WHELAN"

The letter was apparently motivated by previous publication of news stories based upon a publicity release for the Paramus Democratic Club prepared by plaintiff urging Republican party representatives to select Mayor Galda, incumbent Democrat, as their own candidate in the forthcoming primary election.

In his complaint plaintiff charged that readers of "the words" in the letter "derived the meaning therefrom that plaintiff was a believer in the foreign philosophy known as Communism, that he believed in Communism and was a Communist sympathizer, that he believed in and advocated the use of force or violence to overthrow the Government of the United States * * * that he engaged in un-American or Communist tactics upon other citizens and that he did not conduct himself in the manner of a true and loyal American, but that he * * * conducted himself like a Communist * * * in his manner of conducting a political campaign." No other innuendo was stated.

Defendant's answer admitted he wrote the letter. The second separate defense pleaded was:

"The words quoted in the complaint related to matters of public interest and concern and constitute fair comment based upon facts which were true in substance and in fact."

In the pretrial order plaintiff's contentions concerning the libelous character of the publication are set forth as follows:

"2. Plff. contends that the article which appears in para. 3 of the complt. is libelous *per se* and *per quod*, and that deft. wrote & published same with malicious intent to injure the plff. in his good name, character & reputation. Plff. also contends that said

art. was written & pub. wantonly, recklessly and in utter disregard of the truth."

The order sets forth the defense as follows:

"3. Deft. denies that the article heretofore referred to was libelous, either *per se* or *per quod*, and denies that the innuendo set forth in para. 4 of complt. is a reasonable interpretation of the meaning of the matter set forth in sd. art. Deft. denies that he acted, in writing sd. art. or in publishing it, with any malice, but will contend that the art. contained facts and that the comments are based on said facts and are made in connection with matters of public concern."

I.

The principal question for determination is whether the letter is to be held defamatory on its face as a matter of law as imputing that plaintiff is a Communist or Communist sympathizer or otherwise damaging plaintiff's reputation by virtue of the references to the influence of "a foreign philosophy alien to the American way" and to "un-American tactics," *etc.* The trial court rejected plaintiff's contention that the letter bore the meaning of the innuendo stated, as a matter of law, and held it was for the jury to determine what meaning would be derived by the average reader from the language, and he charged the jury accordingly, leaving it to them to decide whether the letter was libelous as holding the plaintiff up to "public hatred, ridicule or contempt" or damaging him in reputation. In this we think the court erred. We regard the specified portions of the letter as defamatory or libelous as a matter of law. (We prefer this expression to "libelous *per se*" for the reasons stated in our recent opinion in *Herrmann v. Newark Morning Ledger Co.*, 48 *N. J. Super.* 420, 443–445 (*App. Div.* 1958).)

In the *Herrmann* case we pointed out that it is the function of the court, not the jury, in the first instance to determine whether the language used is reasonably susceptible of a defamatory meaning and that only where the words are ambiguous in the sense of being reasonably subject to either an innocent or a defamatory meaning, as

determined by the court, does the jury decide as a question of fact whether the readers of the publication understood the language in its defamatory sense. *Ibid.* (48 *N. J. Super.* at *pages* 429, 430) ; *Leers v. Green,* 24 *N. J.* 239, 253, 255 (1957) ; 3 *Restatement, Torts,* § 614; 1 *Harper and James, Law of Torts* (1956), § 5.29, *p.* 463. But where the publication is not reasonably susceptible of a nondefamatory signification but only of a defamatory meaning or meanings it is libelous as a matter of law and the declaration of that conclusion is for the court alone. *Herrmann v. Newark Morning Ledger Co., supra* (48 *N. J. Super.* at *page* 430), and cases there cited.

██ Derogatory imputations related to one's political, economic or social views or philosophies have to be admeasured against the general current of public opinion at the time of publication in order to yield a realistic appraisal of their meaning and their capacity for damage to reputation. 1 *Harper and James, op. cit., supra,* § 5.1, *p.* 353; *Gatley on Libel and Slander* (4*th ed.* 1953), *pp.* 22, 23; *Herrmann v. Newark Morning Ledger Co., supra* (48 *N. J. Super.* at *page* 440) ; *cf. Hartley v. Newark Morning Ledger Co.,* 134 *N. J. L.* 217, 224 (*E. & A.* 1946). There is hardly any question, in our judgment, but that the imputation in March 1956 of being influenced in one's thinking "by a foreign philosophy alien to the American way," coupled with a charge of the use of "un-American tactics," would suggest to the average American newspaper reader that the object of the description was being portrayed as a Communist or Communist sympathizer or devotee. Fifteen years ago it might have connoted adherence to Naziism or Fascism. In each such case such a reference would presumably have lowered the public esteem for and damaged the reputation of the person so described.

█ In *Herrmann v. Newark Morning Ledger Co., supra,* we held that where a substantial number of respectable people in the community would, from a given assertion concerning the plaintiff in a publication, arrive at the conclusion that he was a Communist or Communist sympathizer,

the publication was defamatory as a matter of law, even though other segments of public opinion would not take the same view of the plaintiff from the facts published. (48 *N. J. Super.* at *pages* 438–440, and authorities there cited as to the defamatory nature of an imputation of Communism or association therewith; see also Annotations 171 *A. L. R.* 709 (1947); 33 *A. L. R. 2d* 1196 (1954).)

In any event, assuming that the words complained of are not necessarily imputative of association with Communism, defendant's position is not aided unless it can be said that there is such ambiguity in the meaning of the language as reasonably to sustain a nondefamatory meaning therefrom which a jury might determine as a fact to have been the meaning gathered from the language by the readership of the paper. *Leers v. Green, ubi. cit., supra; Herrmann v. Newark Morning Ledger Co., supra* (48 *N. J. Super.* at *page* 441). Defendant argues that the term "un-American" is vague and not necessarily specifically significant of Communist association. He also suggests there are many foreign philosophies which could be described as "alien to the American way" which are not opprobrious, as, for example, the espousal of monarchy. But we cannot read the references to "un-American" and to "foreign philosophy alien to the American way" in isolation from each other, since the writing must be read as a whole, *Dressler v. Mayer,* 22 *N. J. Super.* 129, 135 (*App. Div.* 1952), or out of the context of the prevailing climate of public opinion. We cannot realistically hold that any of the innocent 'constructions of the language advanced by defendant could reasonably have been found by a jury to be the sense in which the imputations concerning plaintiff in the article would be understood by the readers of the paper. In any case, even if the language in question could be regarded as not necessarily imputing association with Communist philosophies or methods, any other potential signification thereof reasonably inferable from the language used would, in our judgment, be derogatory to plaintiff and damaging to his reputation. A jury could not reasonably hold that an im-

putation that one is "definitely influenced in his thinking by a foreign philosophy alien to the American way," coupled with the charge of use of un-American tactics, would not be so understood as to have the tendency to lower him in the esteem of the community. Thus, there being no innocuous meaning in which the words could reasonably be taken, they were defamatory as a matter of law and the trial court should have so declared. *Herrmann v. Newark Morning Ledger Co., supra.*

It may be noted, in passing, that plaintiff is not to be held to the burden of substantiation of the specific innuendo alleged in the complaint where the publication is libelous on its face without regard to the innuendo. In such case the innuendo may be regarded as surplusage. *Gatley, op. cit., supra*, at *p.* 465; *Curley v. Feeney*, 62 *N. J. L.* 70, 72 (*Sup. Ct.* 1898); *Sipp v. Coleman*, 179 *F.* 997 (*C. C. N. J.* 1910); *Allen v. Oppenheimer*, 166 *F.* 826 (*C. C. N. J.* 1909).

## II.

Plaintiff charges a separate defamation in the imputation that he caused the publication of articles in the name of "many upright citizens" to which they "did not fully subscribe" and, in particular, one such article in the name of a Mrs. Ferrante about which she "knew nothing." This portion of the letter was defamatory. To be described, in effect, as habitually falsifying others' views or as submitting to newspaper editors for publications spurious writings represented as the genuine products of their purported signatories is unquestionably to be libelled. See 33 *Am. Jur., Libel and Slander*, § 50., *p.* 70; Annotation, 53 *A. L. R.* 2d 8, 99 (1957); *cf. Bates v. Campbell*, 213 *Cal.* 438, 2 *P.* 2d 383 (*Sup. Ct.* 1931).

Plaintiff contended, further, that such representations also constituted an imputation of violation by plaintiff of *N. J. S.* 2A:120–1. The trial court ruled to the contrary.

The statute, so far as here material, makes it a misdemeanor to "knowingly and willfully" state or deliver to

any newspaper, *inter alia*, any "false, defamatory, libelous or untrue statement or representation as though it were a fact, concerning any person" and thereby secure the publication of the statement or representation. It is at once apparent that the statute extends to the submission for publication of merely false or untrue statements or representations. They need not, under the literal import of the statutory language, be defamatory or libelous. Moreover, they need not be written; they may be oral. The scope of this language has not heretofore been judicially surveyed.

Prior to the revision of *Title* 2 of the *Revised Statutes* there were two criminal enactments dealing with the publication of false and/or defamatory statements—the original criminal libel act (*L.* 1898, *c.* 204), which became *R. S.* 2:146-1 in the 1937 *Revision,* and *L.* 1947, *c.* 326, which became classified as *N. J. S. A.* 2:129*A*-1. The former made it a misdemeanor to transmit "any libelous statement, untrue in fact," and actually securing its publication. The latter prohibited as a misdemeanor the transmission of any "false and untrue statement as though it were a fact," with intent that such statement be published. The revision of the cited *Title* 2 sections in the form of *N. J. S.* 2*A*:120-1 obviously contemplated a consolidation of the two former provisions and the enactment of a new criminal "libel" act which would be broader in scope than the former *R. S.* 2:146-1 and include liability for untrue statements even if not libelous. However, the "intent to publish" requirement of the former *N. J. S. A.* 2:129*A*-1 is omitted, it being only necessary that the defendant "secure" the publication of the matter. Additionally, the statute extends to false representations, as well as statements. *State v. Renner,* 74 *N. J. L.* 148 (*Sup. Ct.* 1906), and *Earl v. Winne,* 14 *N. J.* 119 (1953), are not presently helpful, as they deal only with *R. S.* 2:146-1, which incriminated only if the statement were libelous.

 We think the letter in question imputes to plaintiff conduct offending the statute. (It has been conceded by defendant throughout that plaintiff is the person indicated

by the presently questioned letter as responsible for the articles said therein to have been issued for publication under the circumstances therein set forth.) It imputes the representation by plaintiff to the publishers that the supposed signers of the articles (like Mrs. Ferrante) held the views stated in the articles released, which representation was necessarily false if the signers either "knew nothing" about their contents or "did not fully subscribe" to them. The letter upon which the present action is based thus did impute the making by plaintiff of false or untrue representations concerning Mrs. Ferrante and other persons, and securing the publication thereof, and consequently lays to plaintiff a violation of the criminal statute.

Defendant undertook to prove the truth of the foregoing portions of the letter by adducing an article published in the *Bergen Evening Record* concerning a recommendation by the executive committee of the Democratic Club to the Republican Organization that it support Mayor Galda for reelection. Certain statements therein are attributed by the article to Mrs. Ferrante, chairlady of the committee. Mrs. Ferrante testified, in substance, that she was at a meeting of the committee at which such a resolution was adopted and that the plaintiff, as publicity chairman, was authorized to prepare and issue press releases reporting the action. She did not see the release until after publication. There is no evidence that plaintiff was authorized to attribute any part of the statement to any particular person. Another newspaper publication based on the same release contained no attribution to Mrs. Ferrante, but to the committee as a whole. Plaintiff testified he prepared the release, that it contained no reference to Mrs. Ferrante and that in answer to an inquiry by a *Bergen Evening Record* reporter as to the identity of the chairman of the committee meeting, he informed him that it was she. As defendant had the burden of proof of justification, and there was no other proof that plaintiff attributed the release or any part of it to Mrs. Ferrante, it would appear that defendant did not sustain the burden sufficiently to create

a jury issue even as to the particularization of the imputation in the letter as to Mrs. Ferrante. *Cf. Wilson v. Savino,* 10 *N. J.* 11, 17 (1952).

But the dispositive consideration is that the charge in the letter is of conduct tantamount to habitual issuance of articles without knowledge of their contents by the putative sources and there was no evidence in support of such an imputation other than the isolated incident mentioned. This aspect of the publication was therefore untrue. The justification was not as broad as the libel. "A charge of general bad conduct cannot be justified by proof of a single act or instance," *Galley, op. cit., supra,* p. 160; *Prosser, Law of Torts (2d. ed.* 1955), § 96, *p.* 631; *Rutherford v. Paddock,* 180 *Mass.* 289, 62 *N. E.* 381 *(Sup. Jud. Ct.* 1902), per Holmes, C. J. (charge that plaintiff was a "dirty old whore" not justified by proof of single act of adultery). We consequently conclude that in respect to this subject matter the letter was libelous and unjustified. The trial court should have so charged the jury.

Defendant intimates, although he does not expressly argue, that the libelous "sting" of the letter just discussed was not sufficiently pleaded because it was not expressly stated in the complaint. We think the point is well taken. Where the complaint states a single innuendo which, in terms, is referable to the entirety of the writing brought in question therein, the defendant ordinarily cannot reasonably be expected to understand that other stings, not obvious on the face of the writing, are also being asserted. We think good practice, in the light of modern notice concepts of pleading, calls for clear specification in the complaint of just what stings a plaintiff is asserting where they are not plainly to be deduced from the face of the writing, especially where a particular sting is expressly articulated by innuendo. *Cf. Herrmann v. Newark Morning Ledger Co., supra* (48 *N. J. Super.* at *pages* 435, 436). But in the present case the progress of the trial clearly brought home to the defendant the assertion of the sting as to falsely attributed articles and the consequent imputation of criminal

conduct, and the issue in respect thereto is to be considered tried by consent, *R. R.* 4:15–2, and therefore appropriately to have been dealt with in the court's charge to the jury.

### III.

At the trial, although not expressly pleaded or referred to in the pretrial order, plaintiff asserted the yet additional sting in the letter of imputing to him "personal vilification, character assassination and maligning of individuals." However, plaintiff made no request that the court charge the jury in respect thereto, nor was there a reference to that aspect of the letter in the motion for judgment. Since, moreover, the judgment must be reversed for other reasons already stated, we deem it unnecessary further to discuss the point.

### IV.

As noted above, the second separate defense in the answer set forth the defense of fair comment. The substantive elements of this defense have been recently authoritatively restated in *Leers v. Green, supra* (24 *N. J.* at *pages* 251–255). An essential requirement is that "fair comment" must be shown to be based on facts truly stated. *Ibid.*, 24 *N. J.* at *page* 254. The references in the article to the "foreign philosophy," *etc.*, and to "un-American tactics" are undoubtedly based, at least in part, upon the other factual accusations in the letter discussed above. It is fatally dispositive of this defense to point out that we have determined above that the charge concerning habitual false attribution of authorship of articles was not supported by evidence of truth thereof. In view of the foregoing, it is unnecessary for us to dwell upon the question as to whether the attribution by the letter to plaintiff of the influence of a foreign philosophy alien to the American way may be regarded as the separate assertion of a fact, rather than of opinion. See *Leers v. Green, supra* (24 *N. J.* at *page* 252). If, as is at least fairly debatable, it is the assertion of a fact

(even though deduced by the writer from other facts), it may be remarked that there was no evidence whatever in the case to support it (*i. e.,* that plaintiff was actually influenced by any such foreign philosophy).

The defense of fair comment was not established on the record laid before us.

The defendant and the trial court stressed the political background of this controversy during the trial and the defendant continues to do so upon this appeal. We find nothing in that background, which is conceded, to be material in respect to any of the specific legal questions raised on this appeal and discussed in this opinion.

Other grounds of appeal related to assertedly prejudicial comments by the trial judge and errors in the charge have been argued, but these are not deemed to require discussion, in view of the result indicated by our previous conclusions.

██ Reversed and remanded for a new trial. The pre-trial order should be redrawn in the light of our comments concerning notice of issues. The position of defendant in respect to the defense of truth should be restated therein with specificity. See *Wilson v. Savino, supra.*