## CHARLES G. McKNIGHT *vs.* SAYER HASBROUCK.

To a declaration in libel the defendant pleaded membership in, and official relation to, a society which made it his duty to communicate to the society the statements complained of, that the communication was made in the discharge of his duty, "without any malice, or intent to injure the plaintiff, and in no other manner whatsoever." The plea did not aver that the defendant made the statements believing them to be true. On demurrer to the plea,

*Held*, that the communication was a privileged one, and that the plea was sufficient in substance and form.

TRESPASS ON THE CASE FOR LIBEL. On demurrer to the plea. *June* 9, 1890. STINESS, J. The declaration charges the defendant with libel. It sets forth that the plaintiff is and for many years has been a doctor of medicine, having a reputation for professional skill and attainments, by means of which he had been elected an honorary member of the Homœopathic Medical Society of the State of New York; that the defendant, intending to injure him in his good name, and to cause him to be expelled from said society, addressed a letter to the secretary of said society, which is the libel complained of, as follows: —

No. 109 High Street,<br>
PROVIDENCE, R. I., *Feb.* 7, 1889.

DR. HERBERT M. DAYFOOT:

*Dear Sir,* — On looking over the Transactions of the New York State Society, I find among the list of honorary members the name of C. G. McKnight, of Providence. At one time of his life, perhaps it might have been all right to have made him an honorary member, though that is open to a great deal of discussion.

At his best he was but a blow-hard, without the slightest degree of principle, though, from the fact that he married into one of our best families and held a government appointment during the war, he was able to attract some little notice, but for a number of years he has done nothing professionally; for a long time back he has had no connection with the state or any other medical society. Some few years ago he ran a third-rate hotel for a while, but he went to smash there. About a year ago he came out over his signature and indorsed one of the most arrant quacks we have had here for years, Dr. H. Warner, and of late he has been going about selling some kind of plasters.

I only write this after consultation with a number of the profession, and especially those whom you have likewise honored. To me he hardly seems like one who is worthy of being upheld by a society like the New York State Society; not only on account of his character, but on account of the fact that he no longer has any connection with the practice of medicine, and has long since prostituted all his former claims on the profession.

I assure you that I do not write this from any ill-feeling toward him, as we hold the pleasantest social relations whenever we meet, but I do it to uphold the standard of excellence that the New York State Society has already attained, and of which I am justly proud.

I also do this by the advice and after consultation with such men as

Dr. J. C. Budlong, Dr. George B. Peck, Dr. Robert Hall, Dr. Isaac W. Sawin, the oldest and best known men of the profession here.

With regrets that I shall not be able to be with you at this meeting, I am,                                   Very sincerely yours,

SAYER HASBROUCK.

The defendant pleads that at the time of the letter he was a member of said society and of the Rhode Island Homœopathic Society, and that both societies were associations of physicians to promote the best interests and to maintain the honor and dignity of the medical profession in New York and Rhode Island respectively; and that he also was a special delegate of each of said societies to the other, whereby the duty was imposed upon him to inform and advise said Homœopathic Medical Society of New York of all matters and things relating to the medical profession, and the members of said society, with which in his judgment it was necessary or advisable that said society should be made acquainted; and that he wrote the letter aforesaid for the information of said society, in the discharge of his duty as member and delegate as aforesaid, "without any malice, or intent to injure the said plaintiff, and in no other manner whatsoever." To this plea the defendant demurs; thus raising the questions whether the letter was a privileged communication, and, if so, whether the plea is sufficient in form and substance. It is well settled that when one makes a communication in the *bonâ fide* discharge of a duty which is, or appears to be, cast upon him by the circumstances, it is a privileged communication, and a defence to an action of libel or slander. The plaintiff does not dispute this, but objects to the plea upon the ground that it does not allege that the defendant made the statements contained in the letter believing them to be true.

Decisions are numerous in which the phrase, "believing them to be true," is used with reference to privileged statements, and following this line the plaintiff argues that this averment must be in the plea. But such decisions, generally, have to do with the result of the evidence, rather than the form of pleading; and they uniformly hold that, the burden being on the plaintiff to show malice by affirmative proof, the defendant is not called upon to offer evidence as to his belief, if nothing more appears than the falsity of the statement. See *Kent* v. *Bongartz*, 15 R. I. 72.

This therefore indicates the proper order of procedure in cases of privilege. The plaintiff charges the defamatory words in his declaration ; the defendant, admitting the words, sets forth in answer by plea or evidence, circumstances which *primâ facie* rebut the inference of malice. This the plaintiff may traverse, raising the issue of a privileged occasion ; or he may reply express malice, *e. g.*, that the defendant did not believe the communication to be true, or did not have reason to so believe, thus raising the issue of the defendant's good faith, upon the principle that one cannot claim a privilege for defamatory statements which he knows to be false, or which he has no reason to believe to be true. We find very few decisions upon the form of pleading, and the rule given in the textbooks, substantially as above (Townshend on Libel and Slander, § 352 ; Odgers on Libel and Slander, * 484), rests upon the single case of *Smith* v. *Thomas*, 2 Bing. N. C. 372. There the plea sets forth that the communication was made in the course of business, and " that, at the time of his speaking the words in question, he, the defendant, firmly believed the same and each of them to be true." The court said that the averment of belief negatived only one ground upon which malice in fact might be presumed against the plaintiff, while, even with belief, the communication might be malicious on other grounds. Hence that averment was held to be bad, because too narrow, and it was said that only the express denial of malice would be sufficiently broad to answer the declaration. To the same effect is *O'Donaghue* v. *McGovern*, 23 Wend. 26. In this case Judge Cowen says, the plaintiff " must aver in his declaration that the libel was false and malicious, and he must show this fact on the trial. The defendant may meet him on the general issue, and, on its appearing that the channel was legal, may demand that the plaintiff shall show negatively that there was want of probable cause, as he must in an action for malicious prosecution. If the defendant will not rely, as he may, on the general issue, but chooses to plead specially, he must then, at least, deny all malice, or insist that there was probable cause for instituting his complaint. The declaration avers that the complaint was false and malicious and uttered with intent to injure the plaintiff. The plea must answer all material allegations, or it is defective in substance."

In *Dawkins* v. *Lord Paulet*, L. R. 5 Q. B. 94, a communication

by a military officer in regard to a subordinate was held to be a matter of absolute privilege, Cockburn, C. J., dissenting, upon the ground that actual malice might be shown. The case, however, is pertinent by showing the course of pleading. The defendant pleaded that the letter was written in the course of his duty, and not otherwise or for any other reason. To this plea was a replication that the words complained of were written and published with actual malice, without reasonable, probable, or justifiable cause, and not *bonâ fide*, or in the *bonâ fide* discharge of the defendant's duty as alleged. A demurrer was filed to this replication, thus raising the question upon which the court gave its opinion. In *Carpenter* v. *Bailey*, 53 N. H. 590, the court held it was not sufficient to state in a plea that the defendant was informed and believed that the statements made by him were true, but it must appear that he had probable cause so to believe. The plea in that case not only alleged information and belief, but also that the statements were made in good faith and without malice or ill-will. The court do not consider the effect of these latter words, but seem to consider the averment of belief as coloring the whole plea, and, being of itself insufficient, the plea was, consequently, insufficient.

We think the demurrer to the plea in this case must be overruled.

*Francis Colwell & Walter H. Barney*, for plaintiff.

*Walter B. Vincent*, for defendant.