## 14611

SMITH v. DUNLOP TIRE & RUBBER CO., INC.

(196 S. E., 174)

June, 1937.

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellant,

*Messrs. Heyward Brockinton, W. M. Easterling* and *C. T. Graydon,* for respondent.

February 1, 1938.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action for slander. The delict charged is set out in the amended complaint in the following language: "That this plaintiff, heretofore, on or about January 20, 1937, was employed as a salesman of the store of the defendant and while this plaintiff was so employed one Fred Voiles, a su-

pervisor or agent of the defendant, came into the store * * * and began making some remarks to the manager * * * and demanded that the cash be delivered to him and while so discussing the cash continued to look at this plaintiff and the manager of the store and acted in a very angry manner and finally stated to this plaintiff and the manager of the store: 'By God, I thought you birds were down here getting fat off of Dunlop. Now I know it. I am going back and get an auditor to give you an audit and show you what is what,' that W. B. Sturgeon, the manager of the store, stated that he did not understand the agent of the defendant and the agent of the defendant, in a loud voice, said: 'Hell, you have been stealing, that's what I mean,' thereby meaning to and accusing this plaintiff, along with the manager of the store, of a crime, to wit, larceny, and the same was so understood by the persons standing around and passing by the store." The company's answer was a general denial.

Upon the call of the case for trial, the County Judge, at the request of defendant's counsel, construed the complaint. He held that it stated a single cause of action for slander *per se*. This construction was assented to by plaintiff's counsel, and the case was so tried. At the close of all the testimony, the defendant moved for a directed verdict upon the ground that the evidence conclusively showed that the alleged slanderous remarks were invited or provoked by the plaintiff himself. The motion was refused and the jury found for Smith $1,000.00 punitive damages. A new trial was then denied by the Court, and this appeal followed.

The exceptions raise two questions, the first of which is whether the trial Judge committed error in refusing to direct a verdict for the defendant upon the ground stated.

We think the motion was properly overruled. W. B. Sturgeon, a witness for the plaintiff, testified that he was employed by the defendant company about December 1, 1936, as the manager of its Columbia store, located at 1223 Lady Street, and that the plaintiff, G. W. Smith, worked

there with him until they were both dismissed; that on or about January 20, 1937, one Fred Voiles, a supervisor or agent of the company, came into the store; that he knew Voiles, as he had been at the store on business for the company before; that the witness was not in the store when Voliees came in on January 20, but arrived a few minutes later and found him "sitting at the desk where all the books and things were, running through the daily reports, and he wanted to know where the deposit slip for that day was. I told him that I hadn't made one, but that I had closed the daily report, and that the deposit slip would follow with the next day's report. I had done that before, and other managers had done it, and he said 'Give me the petty cash,' and I said 'I can't give it to you, I am bonded, and you have no right to it.' * * * he flew into a rage, and said, 'Well, I thought you birds down here were getting fat off of Dunlop. Now I know it. I am going back and get an auditor to give you an audit, and show you what is what.' Mr. Smith interrupted him, and said 'What do you mean?' and he said 'Stealing, by God,' and he walked out of the door, and I didn't see him any more."

The plaintiff testified to the same effect. He stated that he was employed by the defendant company about the Christmas holidays, 1936, and from then continued to work at its store in Columbia until the latter part of January, 1937, and that W. B. Sturgeon was also working there during that time; that Voiles, the defendant's agent and supervisor, came into the store on or about January 20, 1937; that Mr. Sturgeon was not present at the moment, but that a young man named Stevenson, a stranger, was there; that Voiles did not speak to the witness when he first came in, "but he just walked around to the desk and sat down, and commenced looking through that daily report book. I was standing on the other side of the desk looking at him, and the first thing he said to me was: 'Where is the deposit slip for today?' I said: 'Probably Mr. Sturgeon will have it when he comes in. He is out.' He never opened his mouth again, but he kept

on looking through the book like that (indicating), and he pulled over the cash box, and that's all, and just at that time, Mr. Sturgeon walked in behind me, and, of course, he spoke. Mr. Voiles raised his head and spoke, and asked him where the deposit slip was, and he said: 'I didn't make one today. I finished my report, but I was busy.' Then, he said: 'Well, where is the cash? Let's see it,' and Mr. Sturgeon said: 'What do you mean?' * * * And he said 'Let's see the money,' and Mr. Sturgeon said: 'I can't do that.' He said: 'Why?' And Mr. Sturgeon said: 'I can't give you this money, Mr. Voiles.' Mr. Voiles didn't say another word, he just looked down and shoved the books over, and raised up and said: 'I thought you birds were down here getting fat off of Dunlop. Now I know it. I will get an auditor down here and show you what's what.' I was standing back over behind the desk and I heard it, and I asked Mr. Voiles, or at least I asked the man: 'What do you mean by that?' and he said: 'Stealing the company's money. You know what I mean, don't you?' and he whirled around and went out."

L. W. Stevenson also testified for the plaintiff. He stated that he was in the defendant's store at the time Voiles came in, and heard him say, when the manager of the store, W. B. Sturgeon, refused to turn the cash over to him: "Well, I thought you birds were down here getting fat off of Dunlop, and I am going to get an auditor to come in here and give you an audit." The witness further stated that when the plaintiff asked Voiles what he meant by what he had said, he replied, "Stealing," and walked out.

The contention of the appellant is that the defamatory statements complained of, even if the testimony of the respondent and of his witnesses should be conceded as true, were made in answer to plaintiff's own question, and must be held "privileged because the respondent brought it on himself."

In 36 C. J., 1224, the general rule is thus stated: "If plaintiff consented to, or authorized the publication complained of, he cannot recover for any injury sus-

tained by reason of the publication; and the same rule applies to a publication solicited or induced by inquiry on the part of plaintiff or his agent, at least if it was procured by the fraudulent contrivance of plaintiff himself, with a view to an action."

But at page 1231 of the same volume it is said: "Where a person originates slander and afterwards repeats it in answer to a question by the person slandered, made in good faith, merely to ascertain whether defendant had made such charge, the repetition is actionable." And at page 1246: "A party cannot take advantage of such a situation in order to gratify his malice, and plaintiff may recover even where the publication was invited by him, upon proof of express malice on the part of defendant."

In Newell on Slander and Libel, 452, the following appears: "If the only publication that can be proved is one made by the defendant in answer to an application from the plaintiff, or some agent of the plaintiff demanding explanation, such answer, if fair and relevant, will be held privileged."

It is clear from the testimony quoted that the question asked by the plaintiff, in the circumstances disclosed, was for the purpose only of ascertaining what meaning Voiles intended to convey when he stated to Smith and Sturgeon, in his conversation with them about the business, that he knew they were "getting fat off of Dunlop." If this statement was susceptible of two meanings, one innocent and the other defamatory, as contended by the appellant, the plaintiff had a right to know just what the speaker meant. In the circumstances, the good faith of Smith in asking the question is apparent, and was a most natural and to be expected inquiry. Certainly, it does not appear that the publication of the slander was procured by any fraudulent contrivance on the part of Smith, with a view to an action. Furthermore, it was for the jury to say, under all the facts and circumstances, whether the appellant abused the privilege of the occasion.

*Boling v. Clinton Cotton Mills et al.,* 163 S. C., 13, 161
S. E., 195, relied upon by the appellant as sustaining its con-
tention, is easily differentiated from the case at bar. In that
case the complaint alleged that the defendant, Gurry, as su-
perintendent of the mill, had called the plaintiff, at a time
stated, into his office and charged him with the crime of
adultery. It was then alleged, as a second cause of action,
that the plaintiff and his board of stewards had interviewed
Gurry and had asked him if he had made the defamatory
statement, to which he replied that he had. It being clear
from the alleged facts that the plaintiff had invited or pro-
voked the publication of the slander by Gurry, with a view
to suing such person for damages on account of same, the
Court properly sustained a demurrer to that cause of action.
*Thomas v. Southern Grocery Stores, Inc.,* 177 S. C., 411,
181 S. E., 565, is like the present case, and is strong author-
ity for the conclusion here reached.

The second exception, charging the trial Judge with
error in refusing to grant defendant's motion for a
new trial, made upon the ground that "the verdict of
the jury negatives and denies that the plaintiff has sustained
actual damage, hence the verdict for punitive damages is
without foundation," must also be overruled. The defend-
ant charged the plaintiff, as alleged and testified to, with
"stealing," with having committed the crime of larceny. This
was slander *per se;* and in such case, actual damages need not
be shown in order to justify a verdict for punitive damages,
actual damages being presumed to follow defamatory words
which are actionable *per se.* See *Fitchette v. Sumter Hard-
wood Company,* 145 S. C., 53, 142 S. E., 828.

The judgment of the Court below is affirmed

Exception is also taken to the order of the trial Judge
settling the case for appeal. The contention is that it
was not necessary to print the portions of the charge
and of the testimony which were proposed to be omitted by
the defendant, but which were allowed to be done by the
Court's order.

The claim of the appellant is sustained in part. No exception was taken to the charge by either party, and consideration of it by the Court was unnecessary to a decision of any question presented by the appeal. The printing of it in the record for appeal, therefore, except those portions proposed by the appellant, must be paid for by the respondent. And it is so ordered.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.