49 N.J. Super. 262 (1958)
139 A.2d 570
ROBERT J.H. MICK, PLAINTIFF-APPELLANT,
v.
AMERICAN DENTAL ASSOCIATION, A CORPORATION, LON W. MORREY AND HERBERT B. BAIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1958.
Decided March 13, 1958.
*268 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry Green argued the cause for plaintiff-appellant (Mr. Mulford E. Emmel, attorney).
Mr. Frank M. Lario argued the cause for defendants-respondents (Mr. Anthony M. Lario, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
This is an action for libel brought by plaintiff, Robert J.H. Mick, a dentist, against the American Dental Association and its officers, based on a letter written by an official of the Association in response to a communication from Charles W. Yeates, another dentist, and upon a series of articles published by the Association on the subject of fluoridation.
Plaintiff appeals from a judgment of dismissal, with prejudice, entered by the trial judge at the close of plaintiff's case. The judge held that the letter was not libelous as a matter of law but merely an opinion sent to a person *269 who had a right to be informed, and that it was a nonmalicious privileged communication. With respect to the articles, the court concluded that they dealt with subject matter of general public concern, without any direct or indirect reference to plaintiff.
Robert J.H. Mick has engaged in the general practice of dentistry in Camden County since 1935, except for an interval of about 2 1/2 years, from September 1953 to February 1956, when he was in the military service of the United States with the rank of lieutenant-colonel, and stationed for the most part in Germany. He was associated in the military service with Major Charles W. Yeates. Both are members in good standing of the defendant, American Dental Association, a non-pecuniary professional association.
The fluoridation of potable waters as an effective means of building an immunity in teeth to make them less susceptible to decay has for many years engaged the serious study and investigation of dentists, physicians, their professional organizations, and of public health authorities. Since about 1939 the United States Public Health Service has been making epidemiological surveys. In about 1951, the American Dental Association officially sponsored fluoridation. In this it has the support of the American Medical Association, National Research Council, American Public Health Association, and the public health services of the Federal Government and of various states. The position taken by the defendants was preceded by extensive discussions in its official publication, The Journal of the American Dental Association, as well as the distribution of pamphlets and brochures on various phases of the problem. Opponents of fluoridation were articulate and vehement and, in some areas, well organized. They, too, disseminated their views widely through all kinds of publications and public forums.
Plaintiff was among the proponents of fluoridation for about four years, from 1944 to 1948, but then as a result of his independent research, studies and experimental work, he concluded that the artificial use of fluorides was harmful. Plaintiff thereupon embarked on a campaign in violent *270 opposition to fluoridation. He talked at public forums in various states. He wrote letters to many newspapers, printed and mimeographed pamphlets containing his views and circulated them among newspapers and magazines throughout the United States. One of his letters was published in the Congressional Record. While in the military service in Germany, he wrote a letter to the mayor of the City of Kassel, Germany which had begun to use fluoridation, offering to go to that city to speak against and present his arguments on the harmful effects of fluoridation.
On December 3, 1954 the plaintiff requested his army associate, Dr. Charles W. Yeates, to write the following letter to the defendant:
 "3 December 1954
 American Dental Association
 Bureau of Public Information
 222 East Superior Street
 Chicago 11, Ill.
Gentlemen:
From time to time the name of Dr. Robert J.H. Mick has come to my attention as being one of those apparently violently against fluoridation. I have read charges that he has made against our American Dental Association and certain members thereof, the American Medical Association, the United States Public Health Service and certain members thereof. I understand that he has made such accusations over the radio and television also.
I do not believe he is aiding much in the cause of fluoridation.
Is he a member in good standing in the American Dental Association? Do you know anything about him that could be used to discredit him? What is your opinion or answer to the accusations?
If he is wrong  what can be done to prevent his further connection with the American Dental Association and his accusations of fluoridation and the members of the American Dental Association and sponsoring same?
Could charges be brought against him?
Awaiting your answer as I need any suggestions that you may have,
 Sincerely,
 Charles W. Yeates
 Major DC
 5th General Hospital
 APO 154, N.Y., N.Y."
*271 Plaintiff acknowledged that the foregoing letter was sent by Dr. Yeates at his request evidenced by the following notation in his handwriting on the copy of the letter:
"27, January 1955  Above was sent at my request and with my knowledge. (Signed) Robert J.H. Mick."
Dr. Mick testified that he had read that the Bureau of Public Information of the American Dental Association had invited inquiries with respect to the opposition to fluoridation and he requested Dr. Yeates to write the letter because he "was always being kidded [by all his associates] about being opposed to fluoridation * * *" "I had been so active in opposing fluoridation in the Army and before I went into the Service, I wondered if they had anything on me. It was curiosity."
The following reply letter is plaintiff's primary basis for this suit.
 "December 21, 1954.
 Major Charles W. Yeates, DC
 5th General Hospital
 APO 154
 New York, New York.
Dear Major Yeates:
This is in reply to your registered letter of December 3 addressed to the American Dental Association in which you make inquiry regarding Dr. Robert J.H. Mick.
Our records show that Dr. Mick is a member in good standing in the American Dental Association.
As you know Dr. Mick is now on duty with the Armed Forces and I should like to suggest that if you wish an evaluation of Dr. Mick's personal or professional standing that you might make inquiry of the military authorities in charge.
The American Dental Association, of course, is in total disagreement with Dr. Mick's charges relating to fluoridation. The Association believes Dr. Mick's views to be based on complete misinformation and to be totally irresponsible.
 Very truly yours,
 Herbert B. Bain
 Herbert Bain
 Director
 Bureau of Public Information."
*272 The complaint alleges that the last paragraph of defendant's reply letter, and particularly the last sentence, is libelous  "meaning that plaintiff is incompetent to evaluate scientific data relating to his profession and that plaintiff is irresponsible in his professional conduct and not a fit person to practice dentistry."
The complaint also alleges that three publications circulated by the defendant, although they do not identify or name the plaintiff, are nevertheless libelous of plaintiff because he is a well-known opponent of fluoridation. In the August 1953 issue of its Journal, defendant published an article entitled "The Irresponsible Opposition to Fluoridation," written by Dr. J. Roy Doty, and containing the following language: "Because of the lies and half truths being disseminated by a relatively small but vocal group which is apparently dedicated to the perpetuation of misinformation," and further describing the leading opponents of fluoridation as "food faddists, purveyors of so called health foods, publicity seekers and writers of sensation articles, together with very few members of the health profession."
Early in 1953 the Association published and distributed a pamphlet entitled How to Obtain Fluoridation For Your Community, in which it described the types and groups of opponents and their untrustworthy sources of information. In January 1955 it distributed a brochure entitled Comments on the Opponents of Fluoridation, wherein are listed biographical data concerning leading opponents of fluoridation and characterizing them as "quacks," "faith healers," "faddists," or "cultists." The plaintiff is not listed among those named in any of the articles, directly or indirectly, yet he claims that he was included. Plaintiff makes scant reference to this point in his brief. He merely says: "As to [the] question of applicability of the other publications to plaintiff, it was for [the] jury." Defendant urges that plaintiff should be deemed to have abandoned this portion of his complaint. We infer lack of confidence *273 by plaintiff on this point, rather than abandonment, and shall deal with it.
Defendants urge the affirmance of the judgment for several reasons: that the letter was not libelous; that it was qualifiedly privileged because it was written in response to a request for an opinion made by plaintiff or by his agent and because the words contained therein constituted fair comment and criticism; and that the publications did not refer, expressly or by implication, to plaintiff.
Preliminarily, we must consider the proper law applicable to the issues presented for our determination. This question of conflict of laws is not free from difficulty. The Restatement, Conflict of Laws, § 377, p. 457, n. 5 (1934), formulates the rule that "* * * where harm is done to the reputation of a person, the place of wrong is where the defamatory statement is communicated." This view is criticized in 2 Harper and James, Law of Torts (1956), § 30.7, pp. 1700-1704. The Restatement rule is based upon the general tort principle that the lex loci delicti, the place where the wrong was committed, controls the rights and liabilities of the parties, cf. Clement v. Atlantic Casualty Ins. Co., 13 N.J. 439, 442 (1953), and therefore since the place of publication is generally the place where the tort of defamation is complete, Gnapinsky v. Goldyn, 23 N.J. 243, 252(1957), that law should govern. See also Goodrich, Conflict of Laws (3d ed. 1949), § 93, p. 264, n. 13.
This rule has not been universally accepted and, as suggested by Professors Harper and James, there is strong argument for applying the law of the plaintiff's domicile. Mattox v. News Syndicate Co., Inc., 176 F.2d 897, 12 A.L.R.2d 988 (2 Cir. 1949), certiorari denied 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949). The rationale of this theory is that plaintiff is best known at his residence or domicile and his reputation is most likely to suffer there. But even this rule has its limitations where the plaintiff is a person of national prominence.
However, in the instant case we need not determine the choice of law question. Since the law of Germany  *274 or, for that matter, the law of Illinois where the letter was dictated, in an appropriate case  was not pleaded or proved, we would be justified in assuming it is the same as the law of the forum. Leary v. Gledhill, 8 N.J. 260, 268-270 (1951); Somerville Container Sales, Inc. v. General Metal Corp., 39 N.J. Super. 348, 358-359 (App. Div. 1956), modified on rehearing, 39 N.J. Super. 562; Uniform Judicial Notice of Foreign Law Act, § 5, 9A U.L.A., p. 329 (1957).
It is generally accepted that words which impute to a dentist a general lack of professional knowledge, information or complete misinformation on a subject pertaining to or necessary for the proper practice of his profession, or incompetency or irresponsibility, constitute, in the absence of privilege, actionable libel. Such an attack against a practitioner exposes him to ridicule or contempt and subjects him to loss of confidence, one of the most precious assets for the successful practice of any profession. The natural tendency of such a charge is to cause injury to reputation, and the resultant damage is presumed. It is for the court in the first instance to determine whether the words are reasonably capable of a particular interpretation. If they are unambiguous and open only to a single interpretation  whether a defamatory or non-defamatory meaning  the court makes that determination as a matter of law. If the language is ambiguous and is reasonably open to two meanings, one innocent and the other defamatory, then it is for the jury to determine as a question of fact which meaning was understood by those to whom the publication was made. In the evaluation of the issue, the writing must be considered as a whole; words and phrases are not to be taken out of context. These well-settled principles have recently been restated and the authorities collated in Leers v. Green, 24 N.J. 239, 253, 255 (1957); Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 430 (App. Div. 1958); Mosler v. Whelan, 48 N.J. Super. 491 (App. Div. 1958).
*275 Disregarding for the moment the circumstances under which the letter was written and confining our consideration to the question of whether the portion of the letter reading: "The Association believes Dr. Mick's views to be based on complete misinformation and to be totally irresponsible" in context, 1 Harper and James, op. cit., supra, § 5.6, p. 365, was non-defamatory as a matter of law, or whether a jury issue was presented, we hold to the latter view. While we incline to the defendants' factual contention that there was "no attack on the ability or competence of the plaintiff" but rather an assault upon his views and opinions on the subject of fluoridation, nevertheless we conclude that the language was not so unambiguous that a court could hold as a matter of law that it was capable only of the non-defamatory interpretation. A jury could find that readers of the publication would entertain lessened esteem for a dentist whose views on fluoridation were "irresponsible" and that his professional reputation would be lowered in their eyes. Therefore, in a non-privileged situation, it would be for a jury to determine whether the recipients of the communication understood the words in an innocent or a defamatory sense.
On the issue of publication of the defendants' reply letter, it is admitted that Dr. Yeates, the addressee, was plaintiff's agent, and that the information supplied by the defendants was in effect solicited.
When the publication of defamatory matter has been invited, instigated or procured by the one defamed, or by someone acting on his behalf, he generally cannot be heard to complain of the resulting injury, Taylor v. McDaniels, 139 Okl. 262, 281 P. 967, 66 A.L.R. 1246 (Sup. Ct. 1929); McDaniel v. Crescent Motors, Inc., 249 Ala. 330, 31 So.2d 343, 172 A.L.R. 204 (Sup. Ct. 1947); Taylor v. Jones Bros. Bakery, 234 N.C. 660, 68 S.E.2d 313 (Sup. Ct. 1951); Mims v. Metropolitan Life Ins. Co., 200 F.2d 800 (5 Cir. 1952); Prosser, Torts (2d ed. 1955), § 95, p. 613; 1 Harper and James, op. cit., supra, § 5.17, pp. 398-402; 53 C.J.S. Libel and Slander § 80, p. 129, *276 particularly, when it is elicited for the purposes of predicating an action thereon. Richardson v. Gunby, 88 Kan. 47, 127 P. 533, 42 L.R.A., N.S., 520 (Sup. Ct. 1912); Smith v. Dunlop Tire & Rubber Co., 186 S.C. 456, 196 S.E. 174 (Sup. Ct. 1938); 53 C.J.S. Libel and Slander § 95, p. 151; 33 Am. Jur., Libel & Slander, § 94, p. 106. However, the action would not be barred if the plaintiff, or someone at his request, made or caused the inquiry to be made in good faith so as to ascertain whether defamatory charges had been made against him or perhaps to seek clarification of an ambiguous remark. Richardson v. Gunby, supra; Smith v. Dunlop Tire & Rubber Co., supra; Prosser, op. cit., supra, § 95, p. 613; 33 Am. Jur., Libel & Slander, §§ 93, 94, pp. 105, 106, Annotation, 172 A.L.R. 208 (1948).
While we are satisfied that, resolving doubts from the evidence in favor of the plaintiff, Gnapinsky v. Goldyn, supra (23 N.J. at page 252), the issue as to whether plaintiff caused the Yeates letter to be sent in order to elicit a basis for the present action is for the jury, we nevertheless conclude that the action is barred on the theory of invitation or consent. It is offensive to an elementary sense of justice that after securing defendant's candid expression of its opinion of plaintiff's views on fluoridation through his use of Dr. Yeates' letter as a provocative decoy, he should be permitted to sue for the injury he thus invited. We hold that the action of the trial court was justified on this basis, apart from the other defenses discussed hereinafter.
Upon the oral argument, a request was made of counsel to submit supplemental briefs on the question of publication. In addition to the issue of publication to Dr. Yeates, counsel for plaintiff advanced a theory that the publication element of the case was satisfied by publication to a stenographer to whom the letter was dictated and who then transcribed the stenographic symbols. Plaintiff says that these facts were established by defendants' answers to propounded interrogatories.
*277 Our examination of the record fails to disclose that there was offered in evidence the demand for answers to interrogatories and the answers with regard to this issue, and therefore they cannot, under basic principles of evidence, now be advanced as proof of this essential element of a prima facie case. Were the case before us in a posture that required disposition of the question, we would follow the rule that dictation of defamatory words to an amanuensis is sufficient publication to support an action. Pullman v. Hill & Co., [1891] 1 Q.B. 524; Nelson v. Whitten, 272 F. 135 (D.C.E.D.N.Y. 1921); Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505 (Ct. App. 1931, Cardozo, C.J.); Restatement, Torts, § 577, comments (e) and (h), pp. 194, 196 (1938); Prosser, op. cit., supra, § 94, p. 597, 1 Harper and James, op. cit., supra, § 5.15, pp. 392-393, n. 16; Annotation, 18 A.L.R. 776 (1922); cf. Murphy v. Johns-Manville Products Corp., 45 N.J. Super. 478 (App. Div. 1957), certification denied 25 N.J. 55 (1957); Mims v. Metropolitan Life Ins. Co., supra.
However, accepting such publication as sufficient, yet if the letter is the subject of a privileged communication between the writer and the addressee, that privilege extends to the dictation. Ostrowe v. Lee, supra; Boxsius v. Goblet Freres, [1894] 1 Q.B. 842; Osborn v. Boulter & Son, [1930] 2 K.B. 226; 1 Harper and James, op. cit., supra, § 5.15, p. 393, n. 17.
Aside from the questions of publication and consent and assuming the letter to Dr. Yeates to be defamatory or capable of a defamatory purport, we consider the issues of qualified privilege and fair comment. It is urged that the letter falls within the classification of qualified or conditional privilege because it was (a) a communication between parties having a common interest; or (b) fair comment on a matter affecting the public interest.
The burden of proof is upon the defendants to establish the existence of the common interest and privileged occasion; and, with respect to fair comment, that the subject was a legitimate matter of public concern. These are *278 questions of law to be decided by the trial judge unless the material facts are in dispute. Once the existence of the privilege is established, the plaintiff bears the burden of proving that it has been abused, by use of the occasion for an improper purpose, or by the lack of belief in the truth of what was said. It is primarily the duty of the judge to determine whether there is any evidence of abuse of privilege for the jury's determination and, if he finds that there is none, to decide for the defendant. Leers v. Green, supra (24 N.J. at page 255); Murphy v. Johns-Manville Products Corp., supra (45 N.J. Super. at page 492); Dressler v. Mayer, 22 N.J. Super. 129 (App. Div. 1952); Prosser, op. cit., supra, § 95, p. 629; Annotation, 26 A.L.R. 830 (1923).
Both plaintiff and Dr. Yeates, as noted, are members in good standing of the defendant Association. Plaintiff testified that he frequently wrote defendant to "ask for various information" and further:
"Q. And as a member of the American Dental Association you are entitled to write and expect an answer on matters concerning dentistry? A. On matters pertaining to anything they have.
Q. Anything that would be in their official capacity? A. What they consider in their official capacity."
Communications between the Association and its members, on a matter of common interest pertinent to the group or affecting their mutual interests, are qualifiedly privileged. McKnight v. Hasbrouck, 17 R.I. 70, 20 A. 95 (Sup. Ct. 1890). The classic definition, as stated by Baron Parke in Toogood v. Spyring, 1 C.M. & R. 181, 149 Eng. Rep. 1044, 1050 (1834), was that a communication is privileged if "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of one's own affairs in matters where his interest is concerned." Recently the opinions in Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541 (1958), and in Murphy v. Johns-Manville Products Corp., supra (45 N.J. Super. at page 492) restated and applied the principle which is established *279 law that "a communication, made bona fide, upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter which, without this privilege, would be actionable." King v. Patterson, 49 N.J.L. 417 (E. & A. 1887); Rothholz v. Dunkle, 53 N.J.L. 438, 440 (E. & A. 1891); Finkelstein v. Geismar, 91 N.J.L. 46, 48 (Sup. Ct. 1917), affirmed 92 N.J.L. 251 (E. & A. 1918); Evans, "Legal Immunity for Defamation," 24 Minn. L. Rev. 607 (1940).
Unlike absolute privilege, which affords complete protection, qualified privilege affords immunity only if there is no ill motive or malice in fact, and can be lost by abuse on the part of the defendant. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 558 (1955).
The facts presented during the plaintiff's case clearly indicate that the occasion of the publication of the letter by the American Dental Association to Dr. Yeates, a member of that professional group, was such as to give rise to the complete defense of qualified or conditional privilege as stated by the cited authorities. See also Restatement, Torts, § 596, p. 255 (1938). Nor do we have any facts showing express malice indicating an abuse of the afforded immunity. On this point alone, the trial court's decision in dismissing plaintiff's action, at least insofar as it proceeds on the allegedly libelous letter, must be affirmed.
There is, furthermore, a more significant matter of general public concern that must be considered  the defense of fair comment.
The defendants, in advancing the argument that the publication of the letter to Dr. Yeates was fair comment, suggest that they consider this a matter of qualified or conditional privilege. There is a difference of opinion among the authorities as to the rationale of the rule. One view regards fair comment as a question of qualified privilege; the other places the defense entirely outside the scope of libel by stating that writings which come within the ambit *280 of fair comment as opposed to unfair comment are not libelous. 1 Harper and James, op. cit., supra, § 5.28, p. 456 et seq. The theory which regards this as a question of privilege seems to us sound. Ibid. For example, proof of express malice will defeat this defense as it will the qualified privilege we have discussed. Leers v. Green, supra (24 N.J. at pages 254-255).
However, this problem is not a matter of first impression, and under stare decisis we must follow the rule established and iterated by our highest courts. The recent decision in Leers v. Green, supra, firmly indicates that words which constitute fair comment are not defamatory, citing Schwarz Bros. Co. v. Evening News Publishing Co., 84 N.J.L. 486 (Sup. Ct. 1913); Merrey v. Guardian Printing & Publishing Co., 79 N.J.L. 177, 184 (Sup. Ct. 1909), affirmed 81 N.J.L. 632 (E. & A. 1911), and Campbell v. Spottiswoode, [1863] 32 L.J.Q.B. 185, 201 (3 B. & S. 769, 122 Eng. Rep. 288, 292 (1863)), albeit there is no discussion of the rationale underlying the result. In whatever manner one may characterize the issues, it is obvious that the result achieved is substantially the same, and so we will proceed to the merits of this defense.
Fluoridation of drinking water, which affects the health of citizens in a community, is clearly a subject of wide public interest. The publication of scientific data, the evaluation thereof, and the arguments pro and con on the merits and effectiveness of fluoridation, by dental and medical associations, their members and other interested individuals and groups, are highly desirable and the question becomes a proper subject of public comment. The difficulty arises in distinguishing between misstatements of facts from statements of opinion. The distinction between "fact" and "comment" is not always clear; most communications contain an element of each, and the determination of what is fact or comment depends on what is said in the entire article. The immunity applies to bona fide opinion, comment or criticism, but not to false assertions of fact. By taking an active contentious position on a subject concerning *281 the public welfare, plaintiff invited public controversy and is regarded as having invited public judgment. He is in no position to complain if that judgment, opinion, comment or criticism is adverse. One may criticize with severity but may not make false or libelous charges. "Criticism `cannot be used as a cloak for mere invective, nor for personal imputations not arising out of the subject-matter or not based on fact'; `invective is not criticism.' McQuire v. Western Morning News Co., [1903] 2 K.B. 100, 108." Leers v. Green, supra (24 N.J. at page 255). Merrey v. Guardian Printing & Publishing Co., supra; Schwarz Bros. Co. v. Evening News Publishing Co., supra; Prosser, op. cit., supra, § 95, p. 621.
"Where the subject matter thus concerns the general welfare, it follows that however the conduct be assessed, * * * the question is whether the impugned statements are true in fact and the comment made has the essential quality of fairness, an attribute that is not necessarily tested by the choice of words or nicety of expression, but rather by the substance of the observations considered in context.' Leers v. Green, supra (24 N.J. at page 259).
Fair comment must be based on facts truly stated or if not sufficiently stated, they must be identified by clear reference.
"In either case, the defendant enables his readers to judge for themselves how far his opinion is well founded; and, therefore, what would otherwise have been an allegation of fact becomes merely a comment. But if he asserts that the plaintiff has been guilty of disgraceful conduct and does not state what that conduct was, this is an allegation of fact for which there is no defense but privilege or truth.
The same considerations apply where a defendant has drawn from certain facts an inference derogatory to the plaintiff. If he states the bare inference without the facts on which it is based, such inference will be treated as an allegation of fact. But if he sets out the facts correctly, and then gives his inference, stating it as his inference from those facts, such inference will, as a rule, be deemed a comment." Odgers, Libel and Slander (6th ed. 1929), p. 166.
See also Leers v. Green, supra (24 N.J. at page 251); 1 Harper and James, op. cit., supra, § 5.28, p. 459, n. 14, 15. Moreover it *282 "must not contain imputations of corrupt or dishonourable motives on [the part of] the person whose conduct or work is criticised, save in so far as such imputations are warranted by the facts, and (c) must be the honest expression of the writer's real opinion; and if the comment complies with these conditions, it is fair comment, however incorrect be the views expressed by the critic, or however exaggerated or even prejudiced be the language of the criticism; the `limits of criticism are exceedingly wide.' Gatley, Libel and Slander, sections 344, 354." Leers v. Green, supra (24 N.J. at pages 254-255).
In the instant case, while the alleged defamatory letter from the defendants did not itself set forth the facts upon which they based their statements, there was sufficient identification of them. The letter from Dr. Yeates inviting the response read:
"From time to time the name of Dr. Robert J.H. Mick has come to my attention as being one of those apparently violently against fluoridation. I have read charges that he has made against our American Dental Association and certain members thereof, the American Medical Association, the United States Public Health Service and certain members thereof. I understand that he has made such accusations over the radio and television also.
I do not believe he is aiding much in the cause of fluoridation * * *."
This letter exhibits not only a knowledge of the facts but also the public nature of the subject-matter and plaintiff's violent opposition and activity in the arena of public communication.
Whether the matter commented upon is of public concern and whether there is any evidence of unfairness are primarily questions of law for the trial judge; and, when there are issues of fact, it is for the jury to determine whether the words are allegations of fact or expressions of opinion, and if the latter, whether or not they are fair comment. If the alleged libel does not exceed the bounds of fair comment or if there is no evidence upon which a rational verdict for plaintiff can be founded, judgment for defendant should be entered. Leers v. Green, supra (24 N.J. at page 255).
There is perhaps no area of human activity more vital than that of public health. Honest and fearless investigation, *283 professional discussion and challenge of means and methods for the cure and prevention of disease should be encouraged and not suppressed for fear of libelous action. The road of medical history in the conquest of disease is marked with signposts indicating that the most far-reaching and beneficial scientific achievements and their discoverers were subjected to violent attack. The discovery of vaccination for smallpox by Edward Jenner (1749-1823) in England met vehement opposition. In France, Louis Pasteur (1822-1895) was at first ridiculed and medical journals contained attacks upon his theories and experimentation with inoculation of cultures against anthrax. The techniques introduced by Ignaz Semmelweiss (1818-1865) in Hungary for the prevention of puerperal fever were mercilessly derided. The pioneers in the discovery of anesthetics and the dentists who first used them encountered much opposition. These few instances illustrate the survival against attack of medical discoveries which ultimately were proved beneficent to mankind. Undoubtedly, other proposals for prevention or cure were shown to be harmful and valueless as a result of challenge and assault.
Scientific knowledge is only relative and partial, but we constantly seek more knowledge. In the midst of successes there are frequent failures. Indications of the present public controversy over the subject of fluoridation can be seen almost daily in various media. The point is that the widest freedom of discussion and publication of views and their exchange on every side of such questions of public interest should be permitted and even encouraged within the limits of fair comment, and this is the ultimate purpose of the rule.
In discussing the parallel defense of qualified privilege as applied to quasi-judicial proceedings, Justice Jacobs well expressed this philosophy when in Rainier's Dairies v. Raritan Valley Farms, Inc., supra (19 N.J. at pages 557-558), he said:
"Occasionally, however, that policy [freedom from defamatory remarks] conflicts with a counter-policy which suggests that in certain situations there is a paramount public interest that persons be *284 permitted to speak or write freely without being restrained by the possibility of an ensuing defamation action."
See also 1 Harper and James, op. cit., supra, § 5.28, p. 456.
We are not unmindful that this case is before us upon an involuntary dismissal at the conclusion of plaintiff's case. Under oft-cited principles we are impelled on review of an involuntary dismissal, R.R. 4:42-2, as noted above in our discussion of the purpose of Dr. Yeates' solicitation of information, to give the plaintiff every legitimate inference, but such inferences as may be drawn "must be rooted in evidence." Gnapinsky v. Goldyn, supra (23 N.J. at page 252). Cf. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955).
The burden of proving the situation giving rise to the occasion of fair comment is on the defendant. Prosser, op. cit., supra, § 95, p. 629. Cf. King v. Patterson, supra (49 N.J.L. at pages 419-420). But as we have stated, where the facts are undisputed this is a matter of law for the court. Once the evidence shows that the situation is of such import that it becomes a matter for public comment, and such comment is made by the defendant, then the burden of proof is on the plaintiff to show express malice, the "unfairness" of the comment, or any other matter by way of avoidance of the defense. Ibid.
The facts here conclusively establish the nature of plaintiff's position as coming within the scope of those situations giving rise to permissible fair comment and criticism. So, too, there is no evidence whatsoever that negates this total defense. The dismissal of the action with regard to the letter on the ground of fair comment was proper.
One further issue remains to be considered and that is the Association's publications in which plaintiff is not named, directly or indirectly, but which he contends pertain to him as one of the group opposing fluoridation. The Association did not refer to or characterize the plaintiff among the "quacks," "faith-healers," "faddists" or "cultists," but he *285 claims that he "was none the less damaged by these publications in that he was and still is widely known as an opponent to the fluoridation program." Actually, it distributed a brochure listing and furnishing biographical data on the individuals who were so characterized. By the absence of plaintiff's name from this compilation, one would think that he was not included, but since he himself charges that he was within this group, despite denial, the question is whether he has a cause of action.
When defamatory words are directed at a group or class of persons rather than an individual, the plaintiff must show that he is a member of the defamed class and must establish some reasonable application of the words to himself.
"The size of the group to which the defamatory allusion is made has been the most significant factor in determining whether relief should be granted. Where the group is small there is great likelihood that others will understand that the defendant intended to attribute certain qualities, beliefs, or acts to each member. Moreover, others are more likely to believe the statement to be based on information concerning each particular individual rather than that it is a generalization drawn from the observation of a few. As the group becomes larger, it is less likely that the statement will be understood as referring to each member of the group and its character as a generalization becomes clearer." Note, "Developments in the Law  Defamation," 69 Harv. L. Rev. 875, 894 (1956).
See also authorities cited in Golden North Airways v. Tanana Publishing Company, 218 F.2d 612 (9 Cir. 1954).
"If the group is a very large one, as in the case of such words as `all lawyers are shysters,' they are considered to have no application to anyone in particular, since one might as well defame all mankind. Not only does the group as such have no action, but the plaintiff does not establish any personal reference to himself. But if the plaintiff is the only lawyer present, or for some other reason the words are understood by the hearers to be directed individually at him, the personal application may appear.
The rule has been applied quite uniformly to comparatively large groups or classes of a definite number, exceeding, say twenty-five persons. When the group becomes smaller than that * * * the courts have been willing to permit the conclusion that the finger of defamation is pointed at each individual member." Prosser, op. cit., supra, § 92, pp. 583-584. *286 See also 1 Harper and James, op. cit., supra, § 5.7, p. 367; Restatement, Torts, § 564, comment (c), pp. 151-152 (1938); Annotation, 97 A.L.R. 281 (1935).
If the group is sufficiently small, and a particular member is by proper colloquium or innuendo shown to be referred to, such person has a right of action. 1 Harper and James, ubi cit., supra.
Proper appreciation of this rule can be had only by a case-by-case analysis of applicable New Jersey and other authorities.
In Gnapinsky v. Goldyn, supra, where a slanderous statement was allegedly made against "Mary" and where there was no evidence that it referred to plaintiff or was reasonably believed by some person who heard the remark that plaintiff was in fact intended, a judgment of dismissal was affirmed. Chief Justice Weintraub said:
"It must appear that the third person understood the communication to relate to plaintiff * * * the identification of the person defamed may be so evident and the extent of publication such as to warrant an inference that the published statement was understood by at least some third person to bear upon plaintiff. But where, as here, the statement refers merely to `Mary,' more than mere publication must be proved to warrant the inference that the listener in fact understood plaintiff was meant."
The opinion in Merrey v. Guardian Printing & Publishing Co., supra, reveals a situation where there were two sets of accusations. One was confined to the city counsel and the other referred to "city officials" of Paterson, New Jersey. The plaintiff, who was city counsel, asserted that he was included in the term "city officials." There was sufficient evidence to sustain the innuendo concerning city officials and the court held that "whether a libel was published of the plaintiff, or whether by the persons mentioned in the libel the plaintiff was intended, is a question of fact for the jury."
In Reilly v. Curtiss, 83 N.J.L. 77 (Sup. Ct. 1912), defendant made an accusation against the election board of the City of Elizabeth. There the court held:
*287 "A sweeping charge of misconduct leveled against a public board without exception, necessarily points the finger of condemnation at every member thereof, though none are named, and every member of the board may maintain an action therefor."
In Kilpatrick v. Edge, 85 N.J.L. 7 (Sup. Ct. 1913), plaintiff, the owner of a public bath in Atlantic City, brought suit against the publisher of a local newspaper by reason of an article describing an orgy in a Turkish bath. The court held that the fact that plaintiff was not specifically named was not an adequate defense and permitted recovery.
Lastly, in Neiman-Marcus v. Lait, 13 F.R.D. 311 (D.C.S.D.N.Y. 1952), an action was brought by saleswomen and salesmen of a department store against the author of a book which stated that "most of the salesmen are fairies" and that some of the salesgirls were "call girls." The court held that the salesmen had a cause of action under New York law but the saleswomen, in absence of anything tending to identify them individually from the large class of saleswomen, had no cause of action.
The facts here are readily distinguishable from the cited cases. The groups or classes described in the articles are so amorphous and extensive as to preclude the maintenance of an action by plaintiff through claim of association with them because of his common opposition to the cause of fluoridation.
The trial judge's action in granting an involuntary dismissal at the conclusion of the plaintiff's case is affirmed.