100 N.J. Super. 452 (1968)
242 A.2d 629
HOWARD J. THECKSTON AND CAROLINE THECKSTON, PLAINTIFFS-RESPONDENTS,
v.
TRIANGLE PUBLICATIONS INC., A CORPORATION OF DELAWARE, AND DENNIS M. HIGGINS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1968.
Decided April 25, 1968.
*453 Before Judges SULLIVAN, FOLEY and LEONARD.
Mr. Louis G. Hill, member of the Pennsylvania Bar, argued the cause for appellants (Messrs. Powell & Davis, attorneys; Messrs. Dilworth, Paxson, Kalish, Kohn & Levy, members of the Pennsylvania Bar, attorneys).
Mr. Harry Green argued the cause for respondent Howard J. Theckston.
Mr. John S. Fields argued the cause for respondent Caroline Theckston (Mr. Sidney W. Bookbinder, attorney).
SULLIVAN, S.J.A.D.
Plaintiffs Howard J. and Caroline Theckston brought this libel suit against Triangle Publications Inc., publisher of the Philadelphia Inquirer, and Dennis M. Higgins, a reporter on the staff of the newspaper. After a 36-day trial, the jury returned a verdict for $60,000 compensatory damages in favor of Howard J. Theckston. Mrs. Theckston was awarded $20,000 additional damages for loss of consortium arising out of the libel.
Mr. Theckston is the clerk of the Camden County District Court. The charge of libel is based on a series of *454 newspaper articles and an editorial appearing in defendants' newspaper concerning two incidents which took place in the District Court Clerk's office.
The first involved a Puerto Rican woman who had appeared at the District Court Clerk's office in connection with a dispossess suit and who had been arrested as disorderly on Theckston's complaint, forcibly removed from the clerk's office and jailed. On the following morning the woman pleaded guilty to a disorderly person charge and was sentenced to pay a fine of $25 and costs or serve 15 days in jail. Not being able to raise the money immediately, she was remanded to jail where she remained four days until her son paid the fine and costs.
The second involved a memorandum issued two days after the first incident to personnel in the District Court Clerk's office. In it Theckston stated that it had been brought to his attention that some employees had publicly criticized his actions. The memorandum warned employees that Theckston would brook no interference with his administration of the affairs of the clerk's office and that if there should be a recurrence, he would take immediate action to dispense with the services of the person responsible.
As a result of the foregoing the newspaper wrote a series of articles and an editorial highly critical of Theckston's handling of the first incident and his issuance of the intra-office memorandum.
Theckston's contention is that these publications contained inaccuracies and were slanted against him so as to produce a distorted picture of what really happened. He alleges that his version of the first incident was not fully presented by the newspaper, and the report of the so-called interview with him was written in tongue-in-cheek style. He also charges that newspaper characterizations of his conduct and actions were so extreme and unfair as to exceed the admittedly wide latitude allowed a newspaper in reporting on the official conduct of a public official.
*455 Defendants contend that plaintiffs failed to make out a jury issue of liability within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), or that at least the jury verdict as to both liability and damages was contrary to the weight of the evidence.
We have examined the whole record to ascertain whether plaintiffs have presented a jury issue of liability within the framework of the rule laid down in New York Times Co. v. Sullivan. We conclude that defendants' motion for a dismissal of the complaint made at the close of the evidence should have been granted.
New York Times Co. v. Sullivan, held that there is a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. The court noted that a rule compelling the critic of official conduct to guarantee the truth of all his factual assertions  and to do so on pain of libel judgments virtually unlimited to amount  leads to a comparable self-censorship in violation of the First and Fourteenth Amendments. The proper rule to be applied under the constitutional guarantees, said the court, was one which prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice  that is, with knowledge that it was false or with reckless disregard of whether it was false or not. One seeking to prove actual malice, added the court, must do so with the convincing clarity which the constitutional standard demands. (Plaintiffs have not challenged the trial court's ruling that Theckston was a public official and subject to the rule enunciated in New York Times Co. v. Sullivan.
Applying the foregoing rules to the record before us, we conclude that a prima facie case of liability was not proved. It is to be noted that New York Times Co. v. Sullivan *456 dealt with a case involving a publication which contained material factual falsehoods. Even then the broad rule of immunity set forth above was held to apply.
Here the factual misstatements are incidental and do not go to the heart of the alleged libel. The thrust of plaintiffs' complaint is that the newspaper accounts were slanted and presented an unfair picture of what really happened. Actually, we do not have so much a case of factual falsity as one of impartial reporting and fair editorial comment.
The trial judge characterized the newspaper's investigation of the story prior to publication as at best desultory and haphazard. He concluded that this, together with the failure of the newspaper to inquire as to possible motive of the employee in the District Court Clerk's office who first alerted the newspaper to the incident, as well as the "fact that the plaintiff was given no bona fide opportunity to tell his version of the story", satisfied the requirement of proof of actual malice.
As heretofore noted, the test is actual malice  that is, knowledge that the publication was false  or reckless disregard of whether it was false or not. The measure of proof is convincing clarity. Mere negligence in failing to discover misstatements is constitutionally insufficient to show the recklessness that is required for a finding of actual malice. New York Times Co. v. Sullivan, supra. It is on this score that we conclude that plaintiffs failed to establish a prima facie case of liability. Baldine v. Sharon Herald Co., 391 F.2d 703 (3rd Cir. 1968).
Defendant newspaper had received a lead on a story concerning the alleged abuse of his office by plaintiff. Defendant Higgins was assigned to the story. He made a routine investigation of the incident and interviewed a number of persons, including Theckston. As a result, the publications, highly critical of Theckston's actions, appeared. (As heretofore noted, the publications included a report of a telephone interview with Theckston in which he gave his version of why he had the woman arrested.) Granted that the *457 publications lacked the quality of impartial news reporting, we fail to see how it adds up to a showing by convincing clarity of actual malice. Speech concerning public affairs is the essence of self-government so that, where public officials are concerned, it is only the calculated falsehood which will afford redress. Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).
In New York Times Co. v. Sullivan, supra, the Supreme Court referred to its prior holdings that criticism of a judge or his decision, even though the utterance contain "half truths" and "misinformation," does not justify the punishment as criminal contempt; the court adding that if judges are to be treated as men of fortitude, able to thrive in a hardy climate, surely the same must be true of other government officials.
Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967), is a recent decision involving a court clerk who had recovered a libel judgment against a newspaper for a series of articles written on fluoridation of the local water supply. One article had accused the clerk of ordering over the telephone that he did not want his name to appear in the newspaper again and added, "He backed up this order with an inexplicit threat  one merely intended to frighten those who are easily intimidated." The article also stated that "The only conclusion to which we can come is that either Hanks or Mrs. Hurt (President of the County Board of Health) have been in league towards the fanatic end, believing all the wild-eyed ravings against fluoridation despite decades of experience to disprove them, or that perhaps his blustering threats were able to intimidate the lady." In a per curiam opinion, the Supreme Court unanimously reversed the libel judgment, holding that the evidence presented to show actual malice lacked the convincing clarity demanded by the constitutional standard and was insufficient to present a jury question.
The judgment herein is reversed and the matter remanded for entry of a judgment in favor of defendants. No costs on this appeal.