116 N.J. Super. 403 (1971)
282 A.2d 445
ROBERT SCELFO AND CHARLES O'CONNOR, PLAINTIFFS,
v.
RUTGERS UNIVERSITY, PETER GRUNTFEST AND LOUIS ZOCCA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 17, 1971.
*406 Mr. Thomas E. Durkin, Jr. for plaintiffs.
Mr. Morris Stern for defendant Peter Gruntfest.
Mr. Frank R. Cinquina for defendants Rutgers University and Louis Zocca (Messrs. Michels & Schwartz, attorneys).
HARRISON, J.C.C. (temporarily assigned).
This matter comes before the court on motion for summary judgment filed by defendant Peter Gruntfest against libel charges made by plaintiffs Robert Scelfo and Charles O'Connor, and as to both cross-complaints pending. Defendants Rutgers University and Dr. Louis Zocca move for an order granting summary judgment to them against all other parties to the action. The complaint filed by Scelfo and O'Connor, two Newark mounted policemen, against Rutgers, Gruntfest and Zocca alleges that defendants did willfully and maliciously write and publish or cause to be written and published false and libelous statements in the Rutgers Observer of November 13, 1968. Defendant Gruntfest in his answer alleged that his essay failed to identify plaintiffs; his essay was not the proximate cause of the alleged defamation in view of defendants Rutgers and Zocca control of the newspaper; the statements therein are not false or defamatory, and plaintiffs, who are public officials, do not allege nor establish actual malice. A cross-claim was filed by Rutgers and Zocca against Gruntfest for indemnification and contribution, alleging that they did not exercise control over the paper. Gruntfest filed a cross-claim for indemnification and contribution against Rutgers and Zocca, alleging their responsibility for the article as published with headline and photo.
*407 The facts are essentially undisputed by the parties. On November 5, 1968, Election Day, some Rutgers University-Newark students participated in a public demonstration which included a march from Federal Square to Military Park. The demonstration was sponsored by the undergraduate "Students for a Democratic Society" chapter (hereinafter "SDS"). The undergraduate chapter of "Young Americans for Freedom" (hereinafter "YAF") initiated a counter-demonstration. The confrontation between the two groups resulted in skirmishes, yelling and missile throwing. The SDS group retreated into the Campus Center building with YAF remaining outside. Plaintiffs, who were among six Newark mounted policemen assigned to the campus at the time, stood between the two groups at the Campus Center. Defendant Gruntfest, an undergraduate student present at the rally, wrote an essay describing his experiences and feelings on that day, which he submitted to the editorial staff of the Rutgers Observer, the weekly undergraduate newspaper. Gruntfest was not a member of the staff and did not see or hear of his essay again until it appeared in print in the paper on November 13, 1968, together with a photograph of two policemen mounted on horseback and with a headline, "YAF's, Cops, Rightists: Racist Pig Bastards."
In libel actions the preliminary question for the trial court is whether the words at issue are reasonably capable of a defamatory meaning. State v. Browne, 86 N.J. Super. 217 (App. Div. 1965); Neigel v. Seaboard Finance Co., 68 N.J. Super. 542 (App. Div. 1961); Sokolay v. Edlin, 65 N.J. Super. 112 (App. Div. 1961); Coleman v. Newark Morning Ledger Co., 29 N.J. 357 (1959); Mick v. American Dental Ass'n, 49 N.J. Super. 262 (App. Div. 1958); and Dressler v. Mayer, 22 N.J. Super. 129 (App. Div. 1952). Only where words are ambiguous in the sense of being reasonably subject to either a legally innocent as well as defamatory significance, as determined by the court, does the jury decide as a question of fact whether the readers *408 or public understood the language in its defamatory sense. Mosler v. Whelan, 48 N.J. Super. 491 (App. Div. 1958), rev'd 28 N.J. 397 (1958); Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420 (App. Div. 1958); Leers v. Green, 24 N.J. 239 (1957). The court has the duty to terminate the proceedings where in any reasonable view of the evidence the charge of libel has not been sustained. Leers, supra. Summary judgment is not to be denied if documents pertinent to the motion show palpably the absence of any material fact issue, although the allegations of the pleadings, standing alone, may raise such an issue. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954). In this case, examination of the depositions taken of plaintiffs and the affidavits furnished by defendant Gruntfest of other witnesses to the events of November 5, 1968, reveals that no material issue of facts has been raised. In accordance with the above criteria, we conclude that the article as published is not reasonably susceptible of defamatory interpretation and is thus not libelous as a matter of law.
The court reaches the foregoing conclusion because the essay, as written by defendant Gruntfest or inserted under headline and photograph in the article, failed to identify plaintiffs and thus cannot serve as a basis for a defamation action. An essential ingredient of a libel is that it must be "of and concerning" the plaintiff so that a third person could understand the communication to relate to said plaintiff. Gnapinsky v. Goldyn, 23 N.J. 243 (1957). In balancing the societal interest in free speech and press against the individual interest in reputation, courts have chosen not to limit the former except to prevent injury from defamatory statements reasonably susceptible of a definite application to a particular individual. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). Plaintiffs have not presented evidence for a finding that the article referred specifically to plaintiffs, or that it was reasonably believed by some person aware of the article that these plaintiffs *409 were in fact intended  requirements which are explained in Gnapinsky v. Goldyn, supra. Extrinsic circumstances may serve to identify the persons allegedly defamed, but plaintiffs presented nothing of sufficient evidential force to warrant such a finding here.
In Mick v. American Dental Ass'n, supra, plaintiff alleged that publications circulated by defendant, although they did not identify or name plaintiff, were libelous due to defendant's well-known public opposition to fluoridation. Defendant there succesfully contended that such publications did not refer, either expressly or by implication, to plaintiff. The court in reaching its decision enunciated certain rules regarding group defamation, namely that when alleged defamatory words are directed at a group, plaintiff must show that the words applied to him. However, in the present case we do not have a sweeping charge leveled at the entire mounted police squad without exception, but a charge directed to certain unidentified members of the squad assigned to campus. There was no indication that the officers in the photograph were intended objects of criticism. The United States Supreme Court in Rosenblatt v. Baer, supra, supports this established point of law that an imputation regarding one or some of a small group that may cast suspicion on all is not actionable.
Only an explicit charge directed to particular plaintiffs or the entire force would allow any member of the identified group to recover. Such recovery is subject, however, to a showing of "actual malice" if plaintiff is deemed a "public official" within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
In a recent New Jersey case dealing with the issue of identity, Weller v. Home News Pub. Co., 112 N.J. Super. 502 (Law Div. 1970), plaintiffs advanced the theory that they were libelled because readers of defendant newspaper recognized a profile photograph of their mother, captioned as a charity patient but with a fictitious name. The factual *410 issue for the court as to whether her identification as a charity patient was reasonably understood by an appreciable number of readers as damaging to plaintiffs' reputation was decided in the negative. Our determination in this case is supported by that holding which was based upon a similarly unidentified photograph. No reference is made in the body of Gruntfest's article to the photograph; no caption identifies the two men pictured as the specific mounted police mentioned; no evidence of crowds or other events on campus serve to associate the photograph with the described campus confrontation, and the profile shots were taken at enough distance to render the individual features of the two men indiscernible.
Defendant Gruntfest's use of invective and other allegations in the essay do not defame plaintiffs because the words do not cause injury to their reputations or expose them to hatred, contempt, ridicule or disgrace, or to a loss of good will and confidence of the community, or to injury in their profession. Mosler v. Whelan, supra. The general rule of construction is that the writing as a whole must be considered and not words or phrases out of context. Dorney v. Dairymen's League Co-op Ass'n, 149 F. Supp. 615 (D.C.N.J. 1957). Neither the police force nor mounted police were termed "racists" or "bastards" in the body of the article. The court need only consider the defamatory nature of the term "pig" as used in the essay to refer to police, and not "Racists Pig Bastards" in the headline, since a reading of the article clearly shows that this refers to YAF only. And "derogatory imputations related to one's political, economic or social views or philosophies have to be admeasured against the general current of public opinion at the time of publication in order to yield a realistic appraisal of their meaning and their capacity for damage to reputation." Mosler v. Whelan, supra, 48 N.J. Super. at 500.
A consideration of the societal context at the time of the statements would reveal that the college community was *411 to a degree polarized in its support of radical and conservative political views, and a substantial segment of the community would support the police for such behavior as described in the article. In our judgment, the statements referring to the mounted police would not suggest to the average reader that they were remiss in their duty or actually deserving of the invective, but that the author was angry, upset and resentful towards the police. Depositions taken of plaintiffs indicate that as a result of the publication of the article their reputations within the Newark Police Department and general community had not to their knowledge been affected. Plaintiffs not only failed to indicate any evidence of such injury but instead claimed that the mounted police force was accustomed to frequent abusive namecalling from Rutgers students.
Plaintiffs further stated that merchants on their duty beat to whom they showed the article found the epithets and allegations in the article outrageous and unbelievable, and that fellow members in the police department did not believe the allegations. Plaintiffs cannot claim injury to their reputation when they themselves brought attention to the article and solicited opinions. Plaintiffs' subjective appraisal of the effect of the statements on others is of no evidential consequence in proving damages. The harm must be generated by a third person. Arturi v. Tiebie, 73 N.J. Super. 217 (App. Div. 1962). It is offensive to an elementary sense of justice to award judgment to plaintiffs for an alleged injury which they themselves invited by identifying themselves to others and attempting to focus attention upon themselves specifically where such focus did not exist in the article as published.
The common law has long recognized that words of general abuse, regardless of how crude, uncouth or vexatious, unless defamatory within themselves, cannot serve as a basis for a defamation action in the absence of an allegation of special damages. [Dorney v. Dairymen's League Co-op Ass'n, 149 F. Supp. supra, at 620]
*412 Mr. Justice Francis speaking for our Supreme Court in Mosler v. Whelan, supra, 28 N.J. at 399, observed that "short tempers, injudicious language and sometimes indecorous insults, although much to be decried, are concomitants of such a [politically controversial] scene."
Plaintiffs, two municipal policemen whose powers are constitutionally and statutorily derived, are "public officials" and as such fall squarely within the "actual malice" requirement of New York Times Co. v. Sullivan, supra. They neither pleaded nor presented any evidence of "actual malice" on the part of any of defendants, an essential element to be proved if plaintiffs are to prevail. As mounted policemen of the Newark police force plaintiffs perform governmental duties directly related to the public interest and "have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." Rosenblatt v. Baer, 86 S.Ct. at 676. The alleged defamatory statements made by defendant related to the discharge of official duties of patrolmen assigned to the demonstration. We make this finding in keeping with the United States Supreme Court's continuing expansion of the meaning of "public official" in such cases as Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), which stated that anything touching on an official's fitness for office, in that case a judge, is protected by the "actual malice" rule; Rosenblatt v. Baer, supra, involving an appointed supervisor of a county ski recreation area; Beckley Newspaper Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967), involving an elected county clerk of courts. Our own courts have held, in Theckston v. Triangle Publications, Inc., 100 N.J. Super. 452 (App. Div. 1966) that a clerk of a county district court is a "public official", and in Eadie v. Pole, 91 N.J. Super. 504 (App. Div. 1966) that a city tax assessor is a "public official."
Although no reported libel case in this State specifically deals with policemen, it is not a startling conclusion to hold policemen to be "public officials" in view of the criteria established *413 in the above cases. These compel the finding that local law enforcement personnel fall within the category of those officials whom the public depend upon and should be free to criticize within the limits of the "actual malice" rule. The Supreme Court of Illinois applied the "public official" doctrine of New York Times to policemen as follows:
It is our opinion that the plaintiff is within the "public official" classification. Although as a patrolman he is "the lowest in rank of police officials" and would have slight voice in setting departmental policies, his duties are peculiarly "governmental" in character and highly charged with the public interest. It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an "on the street" level than in the qualifications and conduct of other comparably low-ranking government employees performing more proprietary functions. The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot constitutionally be inhibited by threat of prosecution under State libel laws. [Coursey v. Greater Niles Township Publishing Corp., 40 Ill.2d 257, 239 N.E.2d 837, 841 (1968)]
The rule requiring proof of actual malice is thus applicable in this case to delimit a state court's power to award damages for libel in actions brought by public officials against critics of their official conduct. Even if a publication is deemed defamatory, recovery is prohibited unless the statements were made with "actual malice," i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, supra, 376 U.S. at 280, 84 S.Ct. at 726. And "one seeking to prove actual malice * * * must do so with the convincing clarity which the constitutional standard demands." Theckston v. Triangle Publications, Inc., supra., 100 N.J. Super. at 455. Defendant Gruntfest's account of the events of November 5, 1968 does not exhibit such "reckless disregard" of the truth but is at least "substantially true," as corroborated by affidavits of other witnesses to the *414 events and by plaintiffs in their depositions. The essay, in conjunction with either the headlines in quotation marks or the photograph does not exhibit the essential malice. Plaintiffs fail to present any evidence that the allegedly false statements were made with the "high degree of awareness of their probable falsity" demanded by the New York Times case and Garrison v. Louisiana, supra, 379 U.S. at 74, 85 S.Ct. at 216. Plaintiffs have not established false publication relative to specific events. Even if the contents of the article were untrue in fact, as well as derogatory, plaintiffs could not recover because such qualities of the article in themselves do not constitute the actual malice required to support plaintiffs' claim.
For the foregoing reasons, the motions for summary judgment are granted in favor of defendants Gruntfest, Rutgers and Zocca against plaintiffs Scelfo and O'Connor. It follows that the cross-claims for indemnification or contribution, being made moot, are dismissed. An order for judgment accordingly will be entered.